## Fetterman v. Rush Township, Appellant.

*Negligence—Township road—Absence of guard rail—Fright of horse.*

In an action against a township to recover damages for injuries sustained by a defect in a road, the question of the plaintiff's contributory negligence is for the jury, where the evidence shows that there were two other roads which the plaintiff might have taken, but the proof is contradictory as to whether the plaintiff knew of the existence of these roads.

In an action by a husband and wife against a township to recover damages for injuries sustained by reason of the unsafe condition of a road, the evidence for the plaintiff tended to show that they were driving in a buggy on a road between a railroad and the embankment of a river. At the point where the accident occurred there was no guard rail, but ten to twenty feet from it was the beginning of a guard rail which extended on the riverside for some distance over a bridge. Seeing a freight train approaching, the husband alighted and started to lead his horse. As the train approached, the horse took fright and plunged over the embankment. The husband testified that he did not know of the existence of the guard rail. It also appeared that behind them, from ninety to 100 feet, was a lane which crossed the railroad. Defendant claimed that the plaintiff should have turned his horse into this lane. *Held,* that the question of plaintiff's contributory negligence was for the jury and that a verdict and judgment for plaintiff should be sustained.

The question of contributory negligence cannot be treated as one of law, unless the facts and the inferences to be drawn from them are free from doubt. If there is doubt as to either, the case is for the jury.

Argued March 13, 1905. Appeal, No. 142, Oct. T., 1904, by defendant, from judgment of C. P. Northumberland Co., Sept. T., 1903, No. 319, on verdict for plaintiff in case of Jacob Fetterman and Catherine Fetterman, his wife, v. Rush Township. Before RICE, P. J., BEAVER, ORLADY, SMITH and HENDERSON, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before AUTEN, J.

The circumstances of the accident are stated in the opinion of the Superior Court.

Verdict and judgment for Jacob Fetterman for $95.00, and for Catherine Fetterman for $500.   Defendant appealed.

*Error assigned* among others was in refusing binding instructions for defendant.

*S. P. Wolverton* with him *S. P. Wolverton, Jr.*, for appellant. —It was error to submit the case to the jury: Conrad v. Upper Augusta Twp., 200 Pa. 337; Jackson Twp. v. Wagner, 127 Pa. 184; Crescent Twp. v. Anderson, 114 Pa. 643; Boyle v. Boro. of Mahanoy City, 187 Pa. 1; Brendlinger v. New Hanover Twp., 148 Pa. 93; Winner v. Oakland Twp., 158 Pa. 405; Hill v. Tionesta Twp., 146 Pa. 11; Haven v. Bridge Co., 151 Pa. 620; Smith v. New Castle, 178 Pa. 298; Titus v. Northbridge, 97 Mass. 258; Schaeffer v. Jackson Twp., 150 Pa. 145; Chartiers Twp. v. Phillips, 122 Pa. 601; Worrilow v. Upper Chichester Twp., 149 Pa. 40; Fogg v. Inhabitants of Nahant, 98 Mass. 578; Herr v. Lebanon, 149 Pa. 222.

*C. M. Clement*, with him *M. H. Taggart* and *C. E. Kreisher*, for appellee.—It is not contributory negligence to drive alongside of the railroad, even though plaintiff may know of another safe road: Kuntz v. New York, etc., R. R. Co., 206 Pa. 162.

It was not contributory negligence to pass the lane at Vastine's.

It was not contributory negligence to stop the horse within ten feet of the guard rail: Plymouth Twp. v. Graver, 125 Pa. 24; Burrell Twp. v. Uncapher, 117 Pa. 353; Hitchcock v. Amity Twp., 200 Pa. 247; Wilson v. O'Hara Twp., 14 Pa. Superior Ct. 258; Boone v. East Norwegian Twp., 192 Pa. 206; Cage v. Franklin Twp., 8 Pa. Superior Ct. 89; Ewing v. North Versailles Twp., 146 Pa. 309; Kitchen v. Union Twp., 171 Pa. 145; Kuntz v. New York, etc., R. R. Co., 206 Pa. 162; Rauch v. Smedley, 208 Pa. 175.

OPINION BY BEAVER, J., April 17, 1905:

The question involved is succinctly stated by the appellant as follows: " Contributory negligence of the plaintiffs in driv-

ing a horse unaccustomed to cars on a public road alongside of the railroad, when there were other safe roads that could have been taken, and in passing a lane or road into which they could have driven when the train approached, and in stopping the horse within ten feet of a railing put up for safety of travel and in not availing themselves of its protection before the train passed."

Upon the trial of the case, as stated by the court: "This case is submitted to the jury upon the reserved point whether there is any evidence to submit to a jury that would entitle the plaintiffs, or either of them, to recover in this case." Upon the argument of the motion for judgment, n. o. v., the argument was confined to the consideration of the question of the plaintiffs' contributory negligence. Such negligence was alleged to consist of one or more of three distinct acts, as outlined in the question involved.

1. In traveling a supposed unsafe road, when other safe roads were available. This question was raised by the defendant's second point for charge, which was: "If the jury believe that there are at least two public roads leading from South Danville to Numedia, which are away from railroads and which the plaintiffs could have traveled over with safety from fright of their horse by passing trains, and they took the road alongside the railroad, they ran the risk of accident resulting from the dangerous condition of the road." This point was refused and the jury referred to the general charge as to whether or not the plaintiffs should have taken the road in question on the day of the accident. The point leaves out of view entirely the question of the knowledge of the plaintiffs—knowledge of the danger of the one road and the safety of another. This was absolutely essential. This, however, was taken into account in the general charge and we cannot say that there was error therein. A public road is presumably for public travel. Its safety is to be assumed in the absence of knowledge or notice to the contrary. The court could not say, as a matter of law, that the road taken by the plaintiffs was unsafe or that, under the evidence, there were other roads which were safe, and the question as to the knowledge of the plaintiffs, either as to the danger of the one or the safety of the other, was left to the jury.

2. Could the court say, as a matter of law, that the plaintiffs were bound to turn their horse about and seek safety in the Vastine lane? When the approach of the train was discovered, the plaintiffs were from ten to twenty feet of a guard rail. If they were unable to reach the place of safety by going forward, could the court say, as a matter of law, that it was their duty to have sought or that they would have found safety by turning their horse in the road, traveling from ninety to 120 feet, crossing the railroad and driving up Vastine's lane? The untenable character of the proposition is apparent upon its face.

3. The question earnestly pressed and interestingly argued before us was that the plaintiffs, being within—say ten to twenty feet of a guard rail which extended from a bridge which crossed a small stream in both directions, it could have been reached by them, if they had driven forward, and so have reached a place of safety after the time the train was discovered and before it came upon or opposite them. Instead of the husband remaining in his buggy and urging his horse forward to the place of safety, which, by the way, he did not see, he alighted from the buggy, took his horse by the head and kept moving him forward. Before reaching the guard rail, which extended, according to the defendant's draft, some ten or twelve feet from the bridge or culvert toward the plaintiffs, the train came opposite the point at which they were with their horse. The horse became frightened and, at the first jump, broke from the grasp of the husband and went down a bank on the edge of the river, causing the accident which is complained of. As we understand it, in order to affirm the defendant's position, the court would have been bound to say, as a matter of law, that it was the duty of the driver to remain in the vehicle, to urge his horse forward in the expectation of being able to reach a place of safety, of which he had no specific knowledge, although the guard rail which he might have reached thereby was in sight, and that the horse in response to the urging would have gone forward instead of backward or sidewise. How could the court say this? How could it say that, under any given circumstances, a man in peril should do one thing rather than another, either of which an ordinarily prudent man under the same circumstances might do? If the plaintiff driver had known that, if

he remained in his buggy and urged his horse forward, a place of safety might have been reached, that would have evidently been his duty; but in a place and under conditions of peril he undertook to do what any ordinarily prudent man might have done. He deemed it safer to have his horse by the head, in the expectation that he could thereby better control him, than to remain in his buggy. He did not stand still but was going forward, which the defendant says it was his duty to do. We fail to see how the court could have said as a matter of law, even after the fact, that the one course was safer than the other. The question is not what would a man of clearer head and cooler blood and calmer hand have done under the circumstances, looking at them after the peril had passed, but what would an ordinarily prudent man do under the circumstances as they existed? Surely this, under all our cases, was a question for the jury and, as the court well said in closing its opinion refusing judgment n. o. v. on the reserved point: " An inference of negligence is not the only one that can be drawn from the undisputed facts. It is open to debate. Hence we could not declare as matter of law that the plaintiffs were guilty of contributory negligence."

In the late case of Kuntz v. New York, etc., Railroad Co., 206 Pa. 162, Mr. Justice FELL said: "The question of contributory negligence cannot be treated as one of law, unless the facts and the inferences to be drawn from them are free from doubt. If there is doubt as to either, the case is for the jury." The same judge, in Rauch v. Smedley, 208 Pa. 175, said: " Cases are exceptional, in which the court may direct a verdict for the defendant on the strength of testimony presented by him. They never arise where there is real controversy as to the facts, or doubt as to the inferences to be drawn from them." These later cases are in strict accord with all the earlier ones and seem to meet the real question here involved.

The appellant has directed our attention to the case of Nichols v. Pittsfield Twp., 209 Pa. 240. A careful examination of that case, however, shows that it is in no sense exceptional, the defect, if any existed, in the highway having been at a place entirely different from that at which the horse became frightened, and the question there was as to the proximate cause of the accident. Here no question of that kind is raised

by any of the assignments of error, and could not be success-
fully maintained if it had been, the proximate cause of the ac-
cident being the fright of the horse taken in connection with
the dangerous condition of the highway at the place where
both the fright and the accident occurred.

The case was well tried, the charge of the court below was
unusually clear and of the answers to its points the defendant
has no cause of complaint. The reserved question was prop-
erly disposed of for the reasons given and upon the authorities
cited by the court below in the opinion refusing judgment
n. o. v.

Judgment affirmed.