## Foard *v.* Rath, Appellant.

'   *Negligence—Licensee—Evidence—Contributory negligence.*

Where a person goes into a factory building and enters the office by the ordinary and usual passageway to it, and subsequently after leaving the office goes into a room where he knew he had no right to be, and, in an alleged attempt to reach the office again, walks through an opening made in the wall and is injured, he cannot recover damages for his injuries from the owner of the factory; and this is the case whether the room was light or dark.

In entering or leaving a building, the visitor is bound to use the ordinary and customary place of ingress and egress, and if he adopts some other way he becomes a mere licensee and cannot recover for defects outside of or not substantially adjacent to the ordinary way.

Argued Oct. 10, 1906. Appeal, No. 127, Oct. T., 1906, by defendant, from judgment of C. P. No. 5, Phila. Co., March T., 1905, No. 2,469, on verdict of plaintiff in case of Andrew J. Foard v. Charles Rath. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before RALSTON, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $750. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*Alfred T. Steinmetz*, with him *George Wentworth Carr*, for appellant.—Ordinarily the existence of negligence is a ques-

tion of fact for the jury, but when the facts are uncontroverted their legal effect is a question of law for the court: Delaware, etc., R. R. Co. v. Cadow, 120 Pa. 559; Oil Co. v. Torpedo Co., 190 Pa. 350; Huey v. Gahlenbeck, 121 Pa. 238; Jackson v. Grayson, 13 Pa. Dist. Rep. 467; Bube v. Weatherly Borough, 25 Pa. Superior Ct. 88.

The plaintiff was a licensee: Greis v. Mfg. Co., 209 Pa. 276; Stevens v. Nichols, 155 Mass. 472 (29 N. E. Repr. 1150); Reardon v. Thompson, 149 Mass. 267 (21 N. E. Repr. 369); Gibson v. Sziepienski, 37 Ill. App. 601; Iron Works v. Larger, 11 Ind. App. Ct. 367; Faris v. Hoberg, 134 Ind. 269 (33 N. E. Repr. 1028); Pelton v. Schmidt, 97 Mich. 231 (56 N. W. Repr. 689); Flannigan v. Glucose Co., 11 N. Y. Supp. 688; Zoebisch v. Tarbell, 92 Mass. 385; Mallock v. Derby, 76 N. E. Repr. 721; Quantz v. Ry. Co., 49 S. E. Repr. 79.

The plaintiff undoubtedly was negligent: McKee v. Bidwell, 74 Pa. 218; Sparks v. Siebrecht, 45 N. Y. Supp. 993; Brenstein v. Mattson, 10 Daly, 336; Hutchins v. Priestly Express Wagon Co., 61 Mich. 252 (28 N. W. Repr. 85); Bedell v. Berkey, 76 Mich. 435 (43 N. W. Repr. 308); Bemisch v. Roberts, 143 Pa. 1; Sickles v. Philadelphia, 209 Pa. 113; Lerner v. Phila., 13 Pa. Dist. Rep. 165; Robb v. Connellsville Boro., 137 Pa. 42; McIlhenney v. Phila., 214 Pa. 44; Siegler v. Mellinger, 203 Pa. 256.

*Henry B. McLaughlin*, for appellee, cited: Bennett v. R. R. Co., 102 U. S. 577; Indiana, etc., Ry. Co. v. Barnhart, 115 Ind. 399 (16 N. E. Repr. 121); Riegert v. Thackery, 212 Pa. 86; Stable Co. v. Traction Co., 7 Pa. Superior Ct. 104; Devlin v. Beacon Light Co., 198 Pa. 583; Matthews v. R. R. Co., 18 Pa. Superior Ct. 10.

OPINION BY MORRISON, J., March 5, 1907:

This is an action of trespass based on the alleged negligence of the defendant. At the close of the evidence counsel for defendant asked the court to charge that, " Under all the evidence in the case, your verdict should be for the defendant." This point was refused and an exception granted for defendant and a bill sealed. The single assignment of error is in substance that the court erred in refusing said point.

The two controlling questions thus raised are, (a) the negligence of the defendant, and (b) the contributory negligence of the plaintiff.

To present this case fairly it seems necessary to make a somewhat lengthy statement of the facts. On January 18, 1905, the plaintiff, a man aged seventy-four years, drove, with a teamster, to defendant's place of business, fronting south on Laurel street in Philadelphia. Defendant's place consisted of two adjoining buildings. The eastern one was used by him as a factory, and access thereto is by large double doors, described as a gateway by a witness, which opened practically the whole front of the first floor. The western building was used by defendant as an office, access being had thereto through a door from the street, about four feet west of the large double doors above mentioned. About eight feet from the front walls of the buildings, cutting off a portion of the office, was a shaft for a hand lift or dumb waiter used by defendant to lower and raise articles to and from the cellar. Access to this lift was through a door from the office, which, when not in use, was kept closed and fastened on the office side. On January 16, 1905, the defendant's son, Burton, was set at work making an opening in the brick wall, directly opposite the door in the office leading to the lift, so the lift could be used, also, from the eastern building. On the 18th, when the plaintiff came to the factory and was hurt, this opening was substantially made but not finished, as Burton was trimming the rough brick and smoothing the opening on the sides and overhead. At this time this hole was about five feet three inches high, and a little less than three feet wide. There was a passageway leading from the back part of the factory building into the rear of the office. On the latter date the plaintiff entered the defendant's office, by the regular way from the street, to deliver some tin cans which he had sold to the defendant, and, after making known his business, plaintiff went out of the same door through which he had entered, to attend to delivering the cans. This was not the first time the plaintiff had gone in and out of the office by the regular entry from the street. When the plaintiff came out, his teamster had backed the wagon up to the curb near the large doors of the factory. At this time, Charles Rath, a son of the defendant, came out and assisted the driver in put-

ting the cans inside of the factory. While this was being done, plaintiff walked into the factory where the cans were being placed (this being the room where the hole in the brick wall was being made). This hole was about eight or ten feet from the wide front entrance.

The manner of the plaintiff going into and the time of his remaining in the factory room is important, because he had really no business in that room; he was not invited there, and the evidence shows that defendant objected to persons being therein, because he was manufacturing polish by a secret method and the plaintiff probably knew that visitors were not allowed in that room. While the cans were being unloaded, the plaintiff and his teamster say that he asked the defendant to change a five dollar bill, so that he might pay his driver. The defendant took the money, and, as plaintiff testifies, entered the hole in the wall and disappeared. Soon thereafter, one of the defendant's sons went through the hole and another one soon came out of it and at once went back therein. About thirty seconds after defendant took the money, plaintiff walked into the hole, fell down the shaft and was hurt.

Plaintiff contends that he was induced to walk into the hole in the wall by seeing defendant and two of his sons go that way, as he supposed, to the office. But he explicitly testifies that no one invited or told him to go that way to the office. He also contends, contrary to all of the other witnesses, that this hole was very dark; and he further says that he did not see any open door in the opposite side of the shaft.

The positive and uncontradicted testimony is that the door on the office side of the shaft was closed and bolted. The positive testimony of the defendant, two of his sons and two other witnesses is that the defendant and his sons did not go through the hole at all, and that the plaintiff never saw anybody go through that hole into the office. The testimony of all of the witnesses, but the plaintiff and his driver, is that the factory room was, on that afternoon about 3:30 o'clock, perfectly light on account of the large doors opening the whole south end of the building; that the opening in the wall was in plain sight of any person in the factory room. But the jury must have found against, as it seems to us, the strong weight of the evidence, that the room was dark at the hole in the wall

and that the plaintiff saw the defendant and his sons passing through that hole and that he then walked into it and was injured. In our opinion, it makes little difference which horn of the dilemma the plaintiff accepts. If it was dark, how could he see parties going through that opening, and how can he justify walking into a dark hole in the side of a building, for the purpose of going into an office, where a few minutes before he had entered and come out by a perfectly safe way, and this way was only four feet from the large doors of the room in which he stood, and those doors were wide open at the time. His own evidence is clear that he did not see the defendant and his sons go through the hole into the office; he only saw them disappear therein and come out of it. In our opinion, there was nothing in this to invite or justify him in walking into this, as he says, dark hole in the wall. If it was light he could readily see it was unsafe and not an entrance to the office. If it was dark, he was guilty of gross negligence in stepping into it without feeling or examining to ascertain if there was a bottom to it, or a passageway leading to the office. The width of the shaft, from the brick wall to the door on the office side, was twenty-two inches. The door on the office side of the shaft was closed and, therefore, when the plaintiff was in the opening in the brick wall, his face was not over two feet from this door. He could not possibly see any open way to the office. If it was dark, he ought to have reached out in front, and if he had done so his hand would easily have reached the door. If he had stood in the brick opening and felt with his foot for the floor in front of him, he would have found nothing there to step on.

The defendant's point should have been affirmed on the ground of the contributory negligence of the plaintiff. If there had been a hole in the floor of a dark room where the plaintiff had a right or license to be and he walked into it accidentally, a very different question would have been presented. He did not walk into the hole in the wall accidentally, but purposely and recklessly.

Upon the other question, we do not think the defendant was proved guilty of negligence. This was not a room to which visitors and persons having business with the defendant were invited and the plaintiff really had no business in that room at

all.  His business was in the office.  His driver and defendant's son put the cans in the factory room, and the plaintiff has not shown any sufficient reason for going into that room and walking about in the dark, as he claims he did.  Moreover, the defendant's son was engaged in working at the opening in the wall, while the plaintiff was there, and it was not finished.  This son had only left the hole for a very brief time to coal a boiler which he had in charge.

There must have been dirt and debris about the opening, showing that it was not finished, and it must have been visible because it was light enough for the man to work there.  Again, this hole was less than five feet six inches in height, and the plaintiff was nearly that high and he wore a high silk hat and he must have stooped to walk into the hole or his hat must have struck the top of it, and this should have admonished him to pause and examine.

A very careful examination of the testimony convinces the writer that the jury ought to have found that the room was light and the plaintiff could have seen the hole and its character, if he had used reasonable care.  And that he saw nobody pass through that opening or come out of it.  He probably saw persons using the rear entrance to the office, which was several feet back of the hole in the wall.  But the jury must have believed the plaintiff on these questions and, therefore, we will briefly consider the case on the theory that the plaintiff had a license to be in that room ; that it was dark about the hole in the wall and that he saw defendant and others going through it.  But, as we have already indicated, any view we can take of plaintiff's conduct convicts him of gross negligence.

This view renders it unnecessary to spend time on the question of the negligence of the defendant.  The burden rested on the plaintiff to prove this negligence by clear and satisfactory evidence.  Upon the facts we think he signally failed to establish this essential ingredient of his case.  Under all of the cases cited by counsel for the appellee and the general trend of our own cases and many well-considered cases in other states, we are led to this conclusion :

" In entering or leaving a building, the visitor is bound to use the ordinary and customary place of ingress and egress, and if he adopts some other way he becomes a mere licensee and

cannot recover for defects outside of or not substantially adjacent to the ordinary way : " Shearman and Redfield's Negligence, 5th ed., p. 1219.

Upon the plaintiff's own statement of the facts the court ought to have held that there was not sufficient evidence of the negligence of the defendant to carry the case to the jury : Delaware, L. & W. R. R. Co. v. Cadow, 120 Pa. 559.

In Huey v. Gahlenbeck, 121 Pa. 238, it is stated in the syllabus : " One who is injured when lawfully upon the premises of another, but does not show either the direct cause of the injury or that it occurred through the negligence of the defendant, is not entitled to recover damages for the injury."

In Shearman and Redfield's Negligence, 5th ed., p. 1220, it is said : " A mere passive acquiescence on the part of the owner or occupant, in the use of real property by others, does not involve him in any liability to them for its unfitness for such use. They take all risks upon themselves, and have no right to complain of any defect in the premises, even though caused by the direct act of the owner."

This doctrine of licensee is recognized in Pennsylvania. " A mere licensee must avoid patent dangers at his peril upon premises such as an open pit not concealed otherwise than by darkness : " Greis, Appellant, v. Hazard Mfg. Co., 209 Pa. 276 ; see also Stevens v. Nichols, 155 Mass. 472.

In Hart v. Grennell, 122 N. Y. 371, it was held that, " placing a truck in the rear of a store in plain sight was not negligence so as to render the owner liable for injury of a customer who unnecessarily followed the clerk to that part of the store, and in doing so stumbled over the truck."

In Johnson v. Wilcox, 135 Pa. 217, our Supreme Court held, in a case much like the present one, that the plaintiff was injured by his own negligence and that it was not error in the court below to direct a verdict for the defendant.

In Bedell v. Berkey, 76 Mich. 435, the plaintiff endeavored to deliver a machine upon the defendant's premises. He entered from the rear of the building and, trying the door that he usually entered, found it locked. He turned to the adjoining door and entered into a small room. Seeing a light ahead of him he took it for an opening into the room into which the other door led, but in stepping through it fell into

an elevator shaft. The court held that he could not recover.

The appellee cites McKee v. Bidwell, 74 Pa. 218, but we think the principle there is easily distinguished from the present case.

In Pierce v. Whitcomb, 48 Vt. 127, the plaintiff went at night to the defendant's house to buy oats. The defendant had no oats which he wished to sell, but by the plaintiff's importunity he agreed to sell some, and they went together to the barn where the oats were kept. While the defendant was seeking a measure, the plaintiff walked about the barn in the dark, fell through a hole in the floor and was injured. He was held guilty of contributory negligence.

In Bemisch v. Roberts, 143 Pa. 1, the court said (p. 7) : " Under this testimony, it matters nothing whether the plaintiff saw and knew of the defect in the buggy, and nevertheless used it, or whether he did not see what it was his plain duty to see."

We think the doctrine of Robb v. Connellsville Borough, 137 Pa. 42, convicts the plaintiff of contributory negligence ; so also Easton v. Philadelphia, 26 Pa. Superior Ct. 517 ; see also McIlhenney v. Philadelphia, 214 Pa. 44.

In Siegler v. Mellinger, 203 Pa. 256, it was held as stated in the syllabus : " A person who walks on the side of, and not in the middle of an unfamiliar country road on a dark night, is presumed to be negligent."

The doctrine in Sickels, Appellant, v. Philadelphia, 209 Pa. 113, as stated in the syllabus, convicts the plaintiff of contributory-negligence : " Where a woman in broad daylight approaches a slippery ridge eight inches high across the sidewalk, and with full opportunity to see the ridge, steps upon it, falls and is injured, she is guilty of contributory negligence, and cannot recover damages from the city."

Riegert v. Thackery, 212 Pa. 86, cited by plaintiff, is not in point under the facts in the present case.

City of Harrisburg v. Saylor, 87 Pa. 216, cited by plaintiff, is a clear authority that where the facts are undisputed the court should declare the law thereon.

Heh, Appellant, v. Consolidated Gas Co., 201 Pa. 443, cited by plaintiff, is not in point, except that it holds, " A binding

instruction is proper where the evidence is not conflicting and presents the facts on which the case depends clearly and distinctly."

We think this rule applies to the present case, considering every word of the plaintiff's testimony as true.

We have examined the cases cited by plaintiff, to wit: Little v. Telegraph Co., 213 Pa. 229 ; Steck v. City of Allegheny, 213 Pa. 573 ; Fetterman v. Rush Township, 28 Pa. Superior Ct. 77 ; Whaley v. Bank, 28 Pa. Superior Ct. 531 ; Aument v. Telephone Co., 28 Pa. Superior Ct. 610 ; Devlin v. Beacon Light Co., 198 Pa. 583, and Matthews v. Pittsburg and Lake Erie Railroad Co., 18 Pa. Superior Ct. 10, and find nothing in them inconsistent with our views of the present case.

Being clearly of the opinion that the plaintiff failed to establish the negligence of the defendant and that the plaintiff's own theory convicts him of contributory negligence, we sustain the assignment of error.

Judgment reversed, and judgment is now directed in favor of the defendant.