## Simon *v.* Philadelphia Rapid Transit Co., Appellant.

Argued January 8, 1932.   Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Marshall A. Coyne,* with him *Bernard J. O'Connell,* for appellant.—There was no evidence of defendant's negligence: Brague v. Ry., 192 Pa. 242; Phila. & Reading R. R. v. Hummell, 44 Pa. 375; Gray v. R. R., 293 Pa. 28.

Defendant was guilty of contributory negligence: Bass v. R. R., 303 Pa. 382; Magyar v. P. R. T. Co., 294 Pa. 585; Bardis v. R. R., 267 Pa. 352; Kilgallen v. P. R. T. Co., 300 Pa. 451; Van Zandt v. R. R., 248 Pa. 276.

*C. Brewster Rhoads,* with him *Henry W. Balka,* for appellee.—Defendant was guilty of negligence.

Decedent was lawfully on premises of defendant: Van Zandt v. R. R., 248 Pa. 276; Chews v. P. R. T. Co., 90 Pa. Superior Ct. 155; Bardis v. R. R., 267 Pa. 352; Brague v. Rys., 192 Pa. 242; Phila. & Reading R. R. v. Hummell, 44 Pa. 375; Gray v. R. R., 293 Pa. 28.

Decedent was not guilty of contributory negligence: Giles v. Bennett, 298 Pa. 158; Bass v. R. R., 303 Pa. 382; Bardis v. Ry., 267 Pa. 353; Kilgallen v. Transit Co., 300 Pa. 451; Reed v. R. R., 243 Pa. 562.

OPINION BY MR. JUSTICE MAXEY, March 14, 1932:

A company in carrying out its contract with defendant to paint the structure of the Frankfort Elevated Railroad, operated by defendant, employed several painters and cleaners. Among the latter was plaintiff's husband, Louis Simon. It was his duty to prepare the steel surface for the paint by scraping off the old paint. On November 19, 1929, Simon began work at 8 a. m. near Torresdale Station and about an hour and a half later he was struck and killed by a northbound elevated train.

The elevated railroad at this point has both a northbound and southbound track. East of the northbound track there is a cat walk 2 feet 4 inches wide and three feet above the tracks. The distance between the east rail and a plumb line from the westerly edge of the cat walk is 2 feet 8 inches. The decedent was seen on the tracks half an hour before and also a few seconds before the fatality. On the latter occasion an elevated train was approaching from the south. A man claiming to be eyewitness of the accident testified that Simon came from the west side of the tracks to the east side with a bucket in his hand and started to get up on the cat walk, that the train was one hundred or more feet away from Simon at the time and "coming along slowly" and "picked up speed" when it was about thirty or thirty-five feet away. This witness further testified that at the time Simon was struck he was in the cat walk, that his

"right leg was down and as the right leg came up the front of the car caught the leg." Simon's body was twisted around, he fell down on the track and several trucks passed over him and fatal injuries resulted.

The decedent had not been engaged in work on the track surface but on the structure underneath the tracks. Whenever Simon and his fellow employees had to change their working location or move the scaffolding they were in the habit, so it was claimed, of using the lattice work alongside the elevated structure on which to climb up onto the tracks and they would walk along the cat walk and lower themselves to the new location. Witnesses for defendant testified that orders were given daily that none of the employees on the painting job were to go up on the tracks on pain of dismissal and that it was not necessary for the workmen to go up there to move the scaffolding or to change their locations as the work progressed, because other means for the accomplishment of this purpose had been provided.

In the contract between the defendant and the company under which the work in question was being done it was provided "The company will furnish, without cost to contractor, a necessary watchman and flagman to give warning of approaching trains, when contractor's forces are working within the areas occupied by moving trains." There was no watchman on duty at the time and place of the accident under review. The defendant's theory is that a watchman was not required at that point because no workmen were engaged within the actual areas occupied by moving trains. The motorman of the train which struck Simon testified he had operated on this line for some time and he knew painting was in progress.

Defendant contended there was not sufficient evidence of its negligence and that the evidence showed Simon himself was guilty of contributory negligence as a matter of law. The case was submitted to the jury and verdict was returned in the sum of $10,000. Subse-

quently a motion for judgment n. o. v. was filed. This motion was dismissed and judgment was entered upon the verdict. The case came before us on an appeal from the refusal to enter judgment n. o. v.

The plaintiff must, in considering this motion, be given the benefit of every fact and inference of fact pertaining to the issue involved which may reasonably be deduced from the evidence: Guilinger v. P. R. R., 304 Pa. 140. We agree with the court below that there was evidence worthy of submission to the jury and from which the jury was justified in finding the motorman was guilty of negligence. There is a basis for the inference that the motorman saw decedent on the track, slowed down his car to avoid hitting him and then when he thought decedent had reached a point of safety permitted the train to resume its speed. Considering that a human life was at stake, the motorman, if plaintiff's evidence is to be credited, clearly showed want of care under the circumstances. Though the testimony as to the slowing down of the car and its resumption of speed was given by only one witness, the court was justified in submitting this testimony to the jury. There were also circumstances corroborative of this one witness's testimony.

It is true the motorman testified that the first time he saw Simon was "when an object backed out from underneath the cat walk" and at that time he "had full power on" his train of six cars. When he saw this object he said he threw the power off and applied the emergency brake. The motorman testified further that the decedent was about 65 or 70 feet ahead of him when he first saw him. It is undisputed that the body of the decedent was about 50 feet back from the front of the train when the train stopped. From this the inference is logical that the train was stopped by the motorman in a distance of 120 feet after he saw the object referred to. If he stopped the train at 120 feet, it follows that it was not traveling at full speed because the testimony of de-

fendant's witnesses is to the effect that a train traveling at full speed could not be stopped in less than 225 feet. The question of defendant's negligence was obviously for the jury.

As to the alleged contributory negligence of the deceased, there is always a presumption in case of an accident which results in the death of a person, that the person was exercising due care at the time of the fatality. This presumption must be overcome by evidence to the contrary. Defendant contends the evidence disclosed that decedent was a trespasser on the tracks. It is conceded that the decedent was not a trespasser while on the steel structure below the tracks, for that was his place of work under the contract which his employer had with the defendant company. In the course of performance of this work it was necessary—so plaintiff claimed —for Simon and his fellow workmen to go up on the tracks at various times for various reasons incident to the employment and they customarily did this by using the method already referred to in this opinion and which method Simon was apparently using at the time he was injured. It was testified to that "a dozen men in the painting gang went to work in that same way." The defendant, as already noted in this opinion, claimed that practice was daily forbidden. Whether or not defendant acquiesced in this practice became an issue of fact for the jury. In using this method of getting from point to point there were moments when the employee was in danger from the elevated trains because the space between the track and the cat walk was so narrow that a man could not climb upon that walk without being in a position of peril from a passing train. This was the position Simon was in when he was struck. Under the facts as presented in this case the court could not hold that as a matter of law Simon was guilty of contributory negligence in being where he was at the time he was struck or in not showing due care otherwise. The court

would not have been justified in affixing upon Simon the status of a trespasser.

In Reed v. Pitts., C., C. & St. L. Ry. Co., 243 Pa. 562, this court held, in an action against a railroad company to recover damages for personal injuries, that the question of defendant's negligence is for the jury where there is evidence that at the time of the accident plaintiff was employed by a construction company engaged in building a concrete bridge for defendant company, where the use of the trestle by the plaintiff and other employees of the construction company had been customary with the knowledge and in the presence of the inspectors and master carpenters of the defendant company, and where during the construction of the bridge defendant company issued a "slow" order requiring trains to run at the rate of four miles an hour, and the employees of the construction company understood that such order was for their protection, but it was disobeyed, in consequence of which plaintiff, while standing on the trestle, was struck by a train running at a speed of fifteen to twenty miles an hour. This court held further that while the plaintiff could have performed his services in another indirect and less effective way by going beneath the trestle, the work could be more advantageously done by standing on the trestle and that there was evidence of an implied invitation on the part of the defendant for the plaintiff to use the bridge for such purpose; and that he was neither a licensee nor a trespasser.

In the case of Van Zandt v. Phila., B. & W. R. R. Co., 248 Pa. 276, 280, this court said: "The rights and duties of a person lawfully engaged on and near a railroad track are essentially different from those of a person about to cross such track at a public crossing. A person about to pass over the tracks of a railroad at a public crossing is required to stop, look and listen for an approaching train. He must continue to look and listen until he has passed entirely beyond the tracks. ......
The same rules of conduct, however, cannot be applied

to a railroad company and one employed on or along its
tracks. The workman is engaged to perform his service
on or along the tracks. His presence there is necessary
in the discharge of his duties. Trains may be passing
every few minutes or even seconds and his safety re-
quires that he avoid a collision. It is apparent, there-
fore, that if he is to be constantly looking out for an ap-
proaching train he cannot perform the service for which
he is employed. Such a duty is entirely inconsistent
with the performance of his duty toward his employer.
Such attention to passing trains running as frequently
as suggested would defeat the very object for which the
workman was employed. ...... What is required of
the workman is that he exercise care for his safety ac-
cording to the circumstances."

"It is the duty of a railroad company to use reasonable
care and precaution in the operation of its trains or cars,
so as to protect persons working on or about its tracks,
upon its express or implied invitation, from dangers of
which it knows or ought to know, as in the case of one
lawfully on or about its tracks in the employ of an inde-
pendent contractor": 52 C. J., page 617, section 2170.

In view of the evidence as to the methods followed by
Simon and his fellow workmen in shifting their location
as the work progressed, with the alleged acquiescence of
the defendant, which method brought them from time to
time into a zone of danger, the question whether or not
Simon exercised due care for his own safety according
to the circumstances, like the question of defendant's
care under the circumstances, was for the jury.

The judgment is affirmed.